# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ashley A. A.,                                    Case No. 21-CV-1217 (JFD)

                    Plaintiff,

v.                                                        **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security*,*

                    Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ashley A. A. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Plaintiff contends she is disabled by degenerative disc disease, vertigo, post-concussive syndrome, a torn labrum of the right and left hip, fibromyalgia, right knee tendinitis, migraines, chronic pain syndrome, depression, and anxiety. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 15) and Defendant's Motion for Summary Judgment (Dkt. No. 20).

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration ("SSA") on three grounds, including that the administrative law judge ("ALJ") erred in determining that: (1) Plaintiff's mental impairments did not medically equal the criteria within any listing in the Listing of Impairments ("LOI")[1] even

---

[1] The SSA's Listing of Impairments, or LOI, describes impairments to major body systems considered severe enough to prevent an individual from doing any gainful activity. Most impairments listed are permanent, but regardless, there is a durational requirement that the impairment must have lasted, or be expected to last, for at least 12 continuous months.

though he failed to discuss two neuropsychological evaluations in the record; (2) Plaintiff's proper residual functional capacity ("RFC")[2] need not include limitations for mental impairments discussed in those same two neuropsychological reports; and (3) that no medical expert's input was required to reach a decision. As set forth below, the Court concludes that the ALJ did not err in any of these respects and therefore denies Plaintiff's Motion, grants the Commissioner's Motion, and affirms the Commissioner's final decision.

## I.   BACKGROUND

Plaintiff applied for DIB benefits on April 8, 2019, alleging disability beginning on June 15, 2015. (Soc. Sec. Admin. R. (hereinafter "R.") 10, 214–19.)[3] Her alleged disabling impairments include degenerative disc disease, vertigo, post-concussive syndrome, a torn labrum of the right and left hip, fibromyalgia, right knee tendinitis, migraines, chronic pain syndrome, depression, and anxiety. (R. 242.)

### A.   Relevant Medical Evidence

The most relevant medical evidence is from the period between the date of the alleged onset of disability (June 1, 2015) through the date of the final decision (October 15, 2020). The Court therefore focuses on evidence within that general timeframe in this

---

Establishing that a claimant has a listed impairment is often a necessary but not sufficient step to establishing that a claimant is disabled.

[2] RFC, or residual functional capacity, "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

[3] The Social Security administrative record is filed at Dkt. Nos. 14 through 14-12. The record is consecutively paginated, and the Court cites to that pagination rather than the docket number and page.

Order. In addition, the Court does not summarize all of the medical evidence in the record, but only the evidence pertaining to the issues raised on judicial review.

From 2016 through 2020, Plaintiff saw licensed psychologist Dr. Vincent Miles, Psy.D., LP, who diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, somatic symptom disorder, personality disorder, and a trauma- and stressor-related disorder. (R. 247, 556–15, 770–81, 1120–23.) Dr. Miles prescribed a treatment plan of psychotherapy every two weeks. (R. 558.) Sometimes Dr. Miles found Plaintiff alert, happy, functionally intact, and interactive with a full range of affect and minimal anxiety (R. 559, 581), while other times she seemed frustrated with a constricted affect (R. 556) or presented as tired (R. 577, 777). Dr. Miles documented that Plaintiff's activities included going to the gym, which improved her mood; pursuing work at a food coop, as a nanny, at a thrift store, and as an automobile repossessor; visiting her hospitalized grandmother; dog/house-sitting for a friend; dating; and attending aquatic therapy. (R. 559, 561, 566, 570, 581.) Dr. Miles also documented that Plaintiff responded positively to medication for her pain and mood disorders. (R. 771.)

In 2017, Plaintiff saw licensed neuropsychologists Drs. James Porter, Ph.D., LP, and Michael Fuhrman, Ph.D., LP, ABPP. (R. 1114–19.) Drs. Porter and Fuhrman found Plaintiff's memory average to lower average (R. 1117) and concluded her cognitive test results were "minimally abnormal" with abnormal emotional functioning and moderate-to-severe psychiatric symptoms (R. 1118). Drs. Porter and Fuhrman determined Plaintiff's "test results do not support disability from work on the basis of cognition" but that they could not "speak to disability for purely physical or psychiatric concerns." (*Id.*) They

3

recommended medications, therapy, pain management, and physical and occupational therapy as Plaintiff's course of treatment. (*Id.*)

Between December 2017 and May 2019, Plaintiff saw Jonathan Nelson, M.D., and certified physician's assistants Cassandra Amiot, PA-C, and Amanda Walters, PA-C, for a worker's compensation claim and a variety of complaints including chronic pain. (473–30, 1090–12). Dr. Nelson found Plaintiff to be alert with appropriate mood and affect. (R. 482.) When Plaintiff asked him to endorse her assertion that she required part-time limitations in her future employment, Dr. Nelson demurred, stating that "[t]here were numerous inconsistencies in the history[,]" and that dealing with chronic pain successfully is best done by "having a plan to fully engage in activities despite the pain" rather than by "limiting activities[.]" (*Id.*) He then stated, "Bottom line, I'm not sure she'll ever be fully engaging in employment, but I don't have anything 'objective' to base this on." (*Id.*)

From October 2019 to February 2020, Plaintiff saw licensed social worker Lisa Jensen, MSW, LICSW,[4] for counseling concerning Plaintiff's post-traumatic stress disorder ("PTSD"), sexual trauma, and traumatic brain injury. (R. 1148–83.) Ms. Jensen documented that Plaintiff had an extensive history of reported traumas, including sexual, physical, and emotional abuse beginning at an early age, and three motor vehicle-related accidents in 2011, 2018, and 2019. (R. 1149.) Ms. Jensen found Plaintiff generally cooperative, with good eye contact and appropriate affect, dress, and grooming (R. 1149–

---

[4] The ALJ (R. 14) and both parties (Pl.'s Mem. Supp. at 11; Def.'s Mem. Supp. at 12) refer to a **Tina** Jensen, MSW, LICSW, as a provider located at the Center for Psychological Services, but this provider's correct name according to the record is **Lisa** Jensen, MSW, LICSW. (*See* R. 1148–83).

50), but with some working memory problems, distractibility, agitation, and depression (R. 1150). At times, Plaintiff presented to Ms. Jensen as angry, stating she felt "unheard and that no one is helping her." (R. 1156–57.) Ms. Jensen recommended a treatment plan of medical care, therapy, and adult rehabilitative mental health services ("ARMHS"),[5] and supported Plaintiff in developing anxiety reducing strategies. (R. 1153, 1158, 1168.)

In March 2020, Plaintiff saw licensed neuropsychologist Dr. Jeffrey Kearney, Ph.D., LP, for a neuropsychological evaluation. (R. 913–21.) Dr. Kearney found Plaintiff alert, well-oriented, and conversationally appropriate, and found Plaintiff's results on a mental status examination to be normal. (R. 915–16.) He documented that Plaintiff reported "medications have been somewhat helpful." (R. 915.) Dr. Kearney also stated that Plaintiff showed independence; could sometimes do tasks like cooking, cleaning, laundry, and yard work depending on how she felt; managed her own medications and finances; and could drive. (R. 915.) Dr. Kearney opined that Plaintiff was "experiencing a significant degree of emotional distress" and showed "significant somatic difficulties" that made it hard to be sure how to interpret the extent of her other impairments. (R. 917.) Among other things, Dr. Kearney also found that Plaintiff struggled with verbal memory, although she performed well on visual memory testing. (*Id.*) He recommended continued psychotherapy and rehabilitative therapies and stated that he supported Plaintiff's SSA disability

---

[5] Adult rehabilitative mental health services, or ARMHS, provides individuals with a range of mental health services to develop and enhance independent living skills, social competencies, emotional adjustment, and psychiatric stability.

application because, "[a]lthough she does not present with severe neuropsychological deficits," he felt "concerned about her very severe mental health symptomology." (R. 918.)

**B.      Administrative Proceedings**

Plaintiff's DIB application was denied on initial review and reconsideration. (R. 140–44, 147–49.) At Plaintiff's request, an ALJ held a hearing on September 25, 2020. (R. 33–59.) Plaintiff's counsel specifically directed the ALJ's attention to Plaintiff's examination by neuropsychologists Drs. Porter, Fuhrman, and Kearney, her therapist Ms. Jensen, and her physician, Dr. Nelson. (R. 37–39.)

At the hearing, Plaintiff testified that she had completed high school and some college, as well as a professional certification course to be a certified nursing assistant ("CNA"), but has had difficulties with math and reading comprehension. (R. 39–42.) Regarding past work, Plaintiff stated she has been a personal care assistant ("PCA"), a CNA, a thrift store employee, a lot attendant, and an automobile repossessor. (R. 42–47.) Plaintiff testified that her ability to work has been impacted by past head injuries—one in 2011 from a motor vehicle accident, with subsequent concussions in 2018 and 2019. (R. 47–48.) Plaintiff noted that while sometimes she has trouble with dizziness, nausea, and headaches, she is still able to drive. (R. 48–50.) Regarding her mental health impairments, Plaintiff testified that she has daily flashbacks to trauma, including multiple sexual assaults, stating that she has "seen death in front of [her] face[,]" including having "seen a lot of people be hit by cars, motorcyclists, [and her] friends." (R. 51–53.) She testified that she is on medications and is "working really hard to get better." (R. 53.)

Vocational expert Mitchell Norman testified at the hearing in response to two hypothetical questions posed by the ALJ and one by Plaintiff's counsel. (R. 55–57.) The ALJ asked Mr. Norman to consider a hypothetical person of Plaintiff's age, education, and work experience who was mentally limited to performing simple, routine, repetitive tasks requiring only simple decisions, and who had only occasional and superficial interactions with supervisors, coworkers, and the public. (R. 55.) Mr. Norman testified that such an individual would not be able to perform Plaintiff's past work, but that other jobs existed in the economy that such a person could still perform. (R. 56.) The ALJ asked whether such jobs would still be available if the person was hypothetically limited to no interactions with the public, and Mr. Norman testified that they would be. (*Id.*) Mr. Norman also testified that such jobs would require the use of math at varying levels between second to seventh grade, and would require that an employee be off-task less than 10% of the time and absent less than twice per month. (R. 57.) At the close of the hearing, Plaintiff's counsel also asked Mr. Norman whether a person from the previous hypothetical who consistently had "emotional blow-ups" and "berates co-employees" or their "supervisor" would still be employable in those roles. (R. 58.) Mr. Norman answered no. (*Id.*)

The ALJ issued a written decision on March 18, 2021, determining that Plaintiff was not disabled. (R. 7.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520, the ALJ first determined that Plaintiff had not engaged in any substantial gainful activity since the date of the alleged onset of her disability. (R. 12.) At the second step, the ALJ found that Plaintiff had severe impairments of "multi-level lumbar degenerative disc disease, sacroiliac joint spondylosis, right knee tendonitis, bilateral hip

7

labrum tears, fibromyalgia, chronic pain syndrome, obesity, a history of a traumatic brain injury, headaches, a major depressive disorder, a general anxiety disorder, an unspecified personality disorder, and an unspecified trauma and stressor related disorder[.]" (*Id.*)

At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.) Relevant to the issues raised on judicial review, the ALJ also considered Plaintiff's mental impairments to see if they resulted "in one extreme limitation or two marked limitations in a broad area of functioning[,]" which would trigger a disability finding. (R. 14.) The ALJ found that—rather than any extreme or marked limitations—Plaintiff had only moderate limitations in understanding, remembering, or applying information, in concentrating, persisting, or maintaining pace, and in adapting or managing oneself, and had only a mild limitation in interacting with others. (R. 14–15.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. Relevant to the issues raised on judicial review, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other relevant evidence in the record. (R. 16.) While Plaintiff stated that her attention and concentration are impaired and she feels increased anxiety when in public, the ALJ found no more than moderate limitations in mental functioning based both on her mental status examinations, and on her ability to participate in a relatively full range of independent activities. (*Id.*) The ALJ also discussed Plaintiff's cognitive limitations based on a history of traumatic brain injury, but noted that her ability to

8

complete college courses, paired with the treatment notes from Dr. Miles finding Plaintiff functional and making "progress improving her coping skills[,]" did not support additional limitations. (R. 16–17.) For the moderate and mild functional limitations that the ALJ did find, he opined that Plaintiff's RFC accounted for these impairments by limiting Plaintiff to routine, repetitive work with social restrictions. (R. 19.)

The ALJ also considered the persuasiveness of the medical opinion evidence. (R. 19–20.) The state medical agency consultants opined that Plaintiff could perform light work involving simple, routine, repetitive tasks and that Plaintiff was capable of social interactions with coworkers and supervisors. The ALJ found these opinions persuasive because they were consistent with the evidence in the record. (R. 19.) In contrast, the ALJ found the subjective evidence provided by Plaintiff and her mother did not support any greater restrictions in Plaintiff's RFC because the record showed that Plaintiff could perform various activities independently, her treatment had followed a conservative course, and she had shown improvements through undergoing treatment. (R. 20.)

Based on the record, the ALJ concluded that Plaintiff had the RFC, in relevant part,[6]

. . . to perform simple, routine and repetitive tasks; she is able to perform simple work-related decisions; she is able to interact with supervisors and coworkers on an occasional and superficial basis, SUCH THAT WORK IS RATED NO LOWER THAN 8 ON THE PEOPLE SCALE OF APPENDIX B TO THE DOT, 1991 REVISED EDITION;[7] and with no contact with the public.

---

[6] The Court considers only those RFC limitations relevant to the issues raised on judicial review related to Plaintiff's allegedly disabling cognitive and mental impairments.

[7] Appendix B to the Dictionary of Occupational Titles identifies a scale expressing a job's highest appropriate function in relation to people. *See Dictionary of Occupational Titles*, App. B (4th Ed., Rev. 1991). This people scale ranges from 0 to 8, with lower numbers indicating greater ability to function around others. A scale score of 0 indicates a person

(R. 15.) Considering the limitations imposed by her RFC, the ALJ then determined that Plaintiff could not perform her past relevant work. (R. 20.) However, the ALJ found that, based on Plaintiff's age, education level, past relevant work, and RFC, Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 21.) Consequently, at step five, the ALJ found that Plaintiff was not disabled. (*Id.*)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## C.   Judicial Review

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. (Pl.'s Mem. Supp. at 16, Dkt. No. 16.) Plaintiff argues that the ALJ erred in determining that: (1) Plaintiff's mental health impairments did not medically equal the criteria within any listing in the LOI even though the ALJ did not discuss two neuropsychological evaluations in the record; (2) Plaintiff's proper RFC need not include limitations for mental health impairments discussed in those same two neuropsychological reports; and (3) that no medical expert's input was required to reach a decision. (*Id.* at 2– 3.) The Commissioner opposes Plaintiff's Motion and asks that the final decision be affirmed. (Def.'s Mem. Supp. at 2, Dkt. No. 21.)

─────────────────

can mentor others. A scale score of 8 indicates a lower degree of function, limited to taking instructions and helping others.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have

lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.   DISCUSSION

### A.      The ALJ's Listing of Impairments Determination at Step Three

Plaintiff first argues that the ALJ failed to "evaluate critical evidence showing the severity of [Plaintiff's] mental health impairments" because he failed to discuss "the objective evidence found in two neuropsychological evaluations." (Pl.'s Mem. Supp. at 3.) Plaintiff claims that her 2017 evaluation by Drs. Porter and Fuhrman found her cognitive abilities minimally abnormal, her emotional functioning abnormal, and her psychiatric symptoms severe. (*Id.* at 3–4 (quoting R. 1118–19).) Plaintiff also discusses her 2020 evaluation by Dr. Kearney who found, among other things, that Plaintiff suffered from severe mental health symptomatology that involved "'ongoing difficulties with attention and concentration, verbal memory, visual perception, and construction as well as some issues with slowed processing speed.'" (*Id.* at 4 (quoting R. 918).) Plaintiff argues that, by failing to discuss these two evaluations in his decision, the ALJ contravened 20 C.F.R. § 404.1520(3) which requires the Commissioner to "consider all evidence in [a claimant's] case." (R. 5 (quoting 20 C.F.R. § 404.1520(3)).) The Court construes Plaintiff's argument to be that if the ALJ had considered these evaluations, he would have found that Plaintiff met a listing for mental impairment.

A plaintiff bears the burden of proving that their impairment met or equaled a listing's specific medical criteria. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Plaintiff has not presented evidence showing that,

contrary to the ALJ's findings, the record supports a conclusion that Plaintiff meets all of the criteria for any listed impairment, including Listings 12.04, 12.06, 12.08, or 12.15. Instead, Plaintiff points to two neuropsychological evaluations that she claims— incorrectly, as discussed below—the ALJ did not specifically cite in his decision, and argues that this omission merits a finding that the Commissioner erred by failing to make a decision based on the entirety of the record.

Plaintiff's argument is not persuasive. First, even if the ALJ's opinion did not discuss the neuropsychological evaluations, that would not, in and of itself, lead to the conclusion that they were not considered. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig*, 212 F.3d at 436 (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). During the administrative hearing, the ALJ asked Plaintiff's counsel to confirm whether the record was complete, and specifically named Exhibits B1F through B26F as part of that record. (R. 37–38.) The two neuropsychological evaluations that Plaintiff alleges the ALJ failed to consider fall within that range at Exhibits B15F and B22F, demonstrating that the ALJ considered them part of the record that he would consider. (R. 913–21, 1113–19.) More importantly, contrary to Plaintiff's claims, the ALJ did specifically refer to both Exhibits B15F and B22F in his decision:

> The 2017 testing showed low average cognitive performance and achievement, characterized as "minimally abnormal," (**Exhibit B-22F**). The 2020 testing showed a FSIQ of 89, but a borderline working memory score of 77, and an average processing speed of 94 (**Exhibit B-15F**, p. 4). Attention and concentration were described as quite variable (**Exhibit B-15F** p. 5). I

13

do not find any severe organic neurocognitive impairments, however, considering all of the mental impairments, I do rate the first B criteria as being moderately impaired.

(R. 13 (emphases added).) The ALJ mentions B22F again later on as well, stating that "the claimant reported that she attended college and that she was five classes short of an Associate's degree (**Exhibit B-22F**, p. 3), which suggests that her cognitive abilities were intact." (R. 17 (emphasis added).) Therefore, Plaintiff's central claim for the basis upon which she seeks judicial review—that "[n]either of these two exams garnered any mention in the [ALJ's] Decision"—is false.[8]

In addition to explicitly citing both neuropsychological evaluations contained in Exhibits B22F and B15F, the ALJ also considered other relevant evidence concerning Plaintiff's mental impairments. The ALJ documented at several points that he based his decision on "the entire record" (R. 12, 15) and that he made his findings only after "careful consideration" of the record (R. 10, 12, 15, 16). Moreover, the ALJ expressly relied on the treatment records of Plaintiff's psychologist, Dr. Miles, that range across four years from 2016 to 2020 (R. 247, 556–15, 770–81, 1120–23) and Plaintiff's counselor, Ms. Jensen, from October 2019-2020 (1148–83). The Court has already discussed the evidence contained in the treatment records of both Dr. Miles and Ms. Jensen in Section I and it is not necessary recite it in full again here. In brief, these providers found Plaintiff's presented as regularly functional and cooperative (R. 559, 581, 1149–50); Plaintiff's activities were

---

[8] The Commissioner did not point out, in her brief, that this claim of Plaintiff's is demonstrably false. The Court does not know why not, but in any event, the ALJ did discuss the "missing" neuropsychological evaluations.

independent and varied (R. 559, 561, 566, 570, 581); and both providers recommended conservative courses of treatment involving therapy (R. 771, 1153). Combined, the medical records from Dr. Miles and Ms. Jensen comprise a more regular and lengthy evaluation of Plaintiff's mental impairments than those of neuropsychologists Drs. Porter and Fuhrman, who the record shows saw Plaintiff only once, on June 9, 2017, (R. 1113–19), or neuropsychologist Dr. Kearney, who the record shows saw Plaintiff only during March 2020 (R. 913–21). Thus, the Court finds that not only did the ALJ specifically mention both neuropsychological evaluations in reaching his decision, but also that the ALJ relied on substantial evidence in the record in reaching his decision beyond those evaluations.

Additionally, the two neuropsychological evaluations at issue themselves support the ALJ's decision because the neuropsychologists recommended a conservative course of treatment. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quotation omitted) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *see also Wasen A.*, 2020 WL 823095, at *11 (citing *Hamman v. Berryhill*, 680 F.App'x. 493, 495 (8th Cir. 2017)) ("A conservative treatment plan is evidence that a claimant's symptoms are not as severe as alleged."). Drs. Porter and Fuhrman determined that "[t]here [was] substantial room for improved response to pharmacotherapy and psychotherapy[,]"; "[t]here [was] no immediate need to plan for neuropsychological evaluation[,]" and "[t]he test results [did] not support disability from work on the basis of cognition[,]" but that the providers "[could not] speak to disability for purely physical or psychiatric concerns." (R. 1118–19.) Likewise, Dr. Kearney documented that Plaintiff had reported to another provider in February 2020 that she was "feeling somewhat better with

psychopharmacological management and behavioral interventions." Dr. Kearney concluded that Plaintiff was experiencing a "high level of emotional distress" but had "poor stress management and coping skills." (R. 918.) He opined that, "[a]lthough she does not present with severe neuropsychological deficits," he was "concerned about her very severe mental health symptomatology[,]" and recommended that Plaintiff continue to pursue "rehabilitative therapies." (*Id.*) Thus, these two neuropsychological evaluations support the ALJ's decision finding Plaintiff was not disabled because of the conservative course of treatment they recommended.

Finally, even though Plaintiff does not address which specific Listing the ALJ should have found that she met, the Court also finds that substantial evidence supports the ALJ's finding that Plaintiff did not meet the criteria for any Listing. At step three, the ALJ considered whether Plaintiff met the criteria of any listing in the mental health section of the LOI (Listing 12.00), including the potentially most relevant Listing numbers: 12.04 (pertaining to depressive, bipolar, and related disorders), 12.06 (pertaining to anxiety and obsessive-compulsive disorders), 12.08 (pertaining to personality and impulse-control disorders), and 12.15 (pertaining to trauma- and stressor-related disorders), but found that Plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal the criteria of [these] listings." (R. 14.)

In considering Plaintiff's mental impairments, the ALJ also found that none of Plaintiff's mental impairments resulted in one extreme, or two marked, limitations in a broad area of functioning so as to automatically trigger a disability finding. (*Id.*) An extreme limitation would be found if Plaintiff could not function independently,

16

appropriately, or effectively on a sustained basis, while a marked limitation would still allow Plaintiff to perform those functions, but her ability to do so would be seriously limited. (*Id.*) The ALJ concluded that Plaintiff had a mild limitation in interacting with others, noting that treatment notes by Dr. Miles and Ms. Jensen found Plaintiff interactive and cooperative with a full range of affect and good eye contact. (R. 14 (citing R. 771).) The ALJ also found that Plaintiff had moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 14–15.) Specifically, the ALJ noted that Dr. Miles and Ms. Jensen observed that, although Plaintiff had mood-related concerns, she was alert, oriented, functional, and cooperative, and she appeared appropriately groomed. (R. 14 (citing R. 613, 771, 777, 1150).) In sum, the ALJ pointed to substantial evidence in the record to make his finding that Plaintiff had—at most—moderate limitations, and that she failed to meet the criteria of any Listing for mental impairments.

On this record, the Court cannot find that the Commissioner erred in determining that Plaintiff did not meet the criteria for Listings contained under 12.00 concerning mental impairments, nor did she err in failing to cite to every exhibit within the record when her decision is based on substantial evidence amply found within that record. Plaintiff may disagree with the Commissioner's conclusions, but where the Court finds substantial evidence supporting those conclusions—including evidence contained in Exhibits B22F and B15F—the Court may not. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154–56 (2019); *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings at step three of her evaluation process.

**B.      The ALJ's Decision that No Medical Expert's Input was Required at Step Three**

Plaintiff next argues that the ALJ should have sought additional input from an expert in psychology to make his determination about the severity of Plaintiff's mental impairments. (Pl.'s Mem. Supp. at 8.) In particular, Plaintiff argues that the ALJ could not properly determine whether Plaintiff had severe mental impairments when he had failed to consider the two aforementioned neuropsychological evaluations. (*Id.*) It is Plaintiff's contention that—had a psychology expert been present at the hearing, or had the ALJ sent interrogatories to such an expert and received their responses—then the record would have been sufficient for the ALJ to reach a decision about the severity of Plaintiff's mental impairments. (*Id.* at 8–9.)

The Court finds no error in the ALJ's decision based on Plaintiff's argument. First, as noted above in Section III.A., Plaintiff's contention that the ALJ failed to cite to these two evaluations is false. Plaintiff's claim that an independent psychological expert should have been consulted is unsupported to the extent is premised upon an alleged failure by the ALJ to consider the neuropsychological evaluations. Second, an ALJ is not required to have a medical expert testify at a hearing. *See* SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017) (stating that "adjudicators at the hearings level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s)") (emphasis added). Plaintiff concedes this. (Pl.'s Mem. Supp. at 12.)

Sometimes a plaintiff's record is incomplete, leading to a request for a medical expert to testify or provide input, but this is not the case here. Where a claimant's record

contains evidence that is consistent and sufficient to make a determination, an ALJ may properly reach a disability determination. 20 C.F.R. § 404.1520b(a). Conversely, where a claimant's record "contains an internal conflict, is ambiguous, or where the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques," an ALJ may take additional steps to resolve the inconsistency before reaching a determination, including asking for additional expert testimony. *Id.* Here, the ALJ did not find Plaintiff's record ambiguous or insufficient, nor has Plaintiff shown otherwise. *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (finding that the record provided a sufficient basis to support an ALJ's decision when it contained numerous medical reports, medical tests, disability reports, questionnaires, and hearing transcripts). The record here spans five years and over 1,000 pages. It is replete with evidence providing a sufficient basis for the ALJ's decision, and while Plaintiff claims that the ALJ failed to cite to some parts of the record in his decision, this assertion—even if it were true, which it is not—would not suffice to prove that the ALJ erred. *Craig*, 212 F.3d at 436.

On this evidence, the Court cannot find that the Commissioner erred in determining the record was complete and additional medical expert testimony was unnecessary. Plaintiff is free to disagree with the ALJ's findings, but if the Court finds that substantial evidence in the record supports those findings, it must defer to the Commissioner—as it does here. *See Biestek*, 139 S. Ct. at 1154–56.

**C.     The ALJ's Determination of Plaintiff's Residual Functional Capacity Between Steps Three and Four**

Plaintiff's final argument is that the ALJ inaccurately determined her RFC because the ALJ failed to consider the two neuropsychological evaluations, then posed inaccurate hypothetical questions to the vocational expert at the hearing because of his failure to consider those evaluations. (Pl.'s Mem. Supp. at 7.) In particular, the Court reads Plaintiff's argument to be that the ALJ should have included in his hypotheticals at the hearing that the person in question has abnormal emotional functioning and exhibits severe mental health symptoms. (*Id.* at 6 (citing R. 118, 918).)

When assessing a plaintiff's RFC, the Commissioner must consider all relevant evidence in the record. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). However, a plaintiff still bears the burden of proving their RFC. *See, e.g., Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Plaintiff has not pointed to evidence in the record that the ALJ left unconsidered in his analysis. The ALJ considered the two neuropsychological evaluations at issue, citing to them in the record. *See supra* Section III.A. Moreover, the ALJ considered evidence regarding Plaintiff's mental impairments—including her emotional functioning and mental health symptoms—which the Court has recounted above in Section I and will not repeat in full again here. In brief, the ALJ noted that Plaintiff's "therapists document emotional dysregulation and distracted behavior, but [that Plaintiff] does manage symptoms and gain benefit from medication and coping skills." (R. 19.) The ALJ also found that Plaintiff had not required hospitalization and that she could function socially, albeit with a moderate

impairment which the ALJ found justified a social limitation in the RFC. (*Id.*) The ALJ added an additional limitation of no public interaction to Plaintiff's RFC to account for her PTSD symptoms. (*Id.*) However, the ALJ determined that, overall, "[t]he mental health records show sufficient functionality for simple work[,]" particularly where Plaintiff "lives on her own and is able to manage her symptoms through counseling and medication." (*Id.*)

The Court concludes that there is substantial evidence in the record supporting the ALJ's findings regarding Plaintiff's RFC. The ALJ explained the limitations included in the RFC—simple, routine tasks and decisions; limited interaction with fellow employees; and no contact with the public—and the ALJ also explained why no further limitations for mental impairments needed to be included in the RFC—because the record supported that Plaintiff could function well enough to work given her conservative course of treatment and her ability to perform various independent activities. *Brown*, 611 F.3d at 955.

Plaintiff asks this Court to find that the ALJ did not ask the vocational expert the right hypotheticals, but hypotheticals are not what determines a plaintiff's RFC. Rather, an RFC is informed by whether the ALJ finds substantial evidence in the record to support it. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.2012). Where the record does not support that particular limitations are present, an ALJ could ask hypothetical questions about those limitations during a hearing, but still not ultimately adopt them in a plaintiff's RFC. Here, the ALJ did not find adequate support in the record for an RFC that included further limitations for more severe symptoms of emotional dysfunction or poor mental health. (R. 19.) Therefore, the questions that the ALJ asked—or failed to ask—of the vocational expert during the hearing do not dictate any other finding.

21

On this record, the Court cannot find that the Commissioner erred when she determined that Plaintiff's RFC need not include limitations relating to Plaintiff's emotional function or mental health symptoms beyond those already contained in the RFC because, where the Court finds substantial evidence supporting those conclusions, the Court defers to the Commissioner's decision. *See Biestek*, 139 S. Ct. at 1154–56; *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings between steps three and four of her evaluation process, and that the ALJ did not commit a reversible error in determining Plaintiff's RFC.

In sum, because the Court finds that substantial evidence in the record supports the Commissioner's findings, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's Motion for Summary Judgment (Dkt. No. 15) is **DENIED**;

2.   Defendant's Motion for Summary Judgment (Dkt. No. 20) is **GRANTED**; and

3.   The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: August 14, 2022                         *s/ John F. Docherty*
                                              JOHN F. DOCHERTY
                                              United States Magistrate Judge